# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 14, 2007

Charles R. Fulbruge III
Clerk

No. 06-11228
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

SHARIQ AHMED KHAN

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:05-CR-133-2

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Shariq Ahmed Khan ("Khan") appeals his conviction of one count of Conspiracy to Transport and Harbor Aliens Illegally in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), and (v)(I); three counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) and 18 U.S.C. § 2; and three counts of Harboring Illegal Aliens and Aiding and Abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(iii)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and (v)(II) and 18 U.S.C. § 2. Khan asserts that these convictions were not supported by sufficient evidence. Because we find that the government produced sufficient evidence to support these convictions, we affirm.

I. BACKGROUND

In the Summer of 2005, Immigration and Customs Enforcement (ICE) Senior Special Agent Robert J. Hlavac was conducting an investigation involving the sale of fraudulent immigration documents to illegal aliens in Dallas, Texas. During the investigation, ICE Special Agent David Guerra, Jr. had numerous meetings with Khan, in which Agent Guerra was working undercover and posing as a person who had access to a corrupt Citizenship and Immigration Services (CIS) employee. In June 2005, Khan met with Agent Guerra and told him he was interested in obtaining work permits for individuals from India. Agent Guerra told Khan that he would charge $3,000 per person each time documents were purchased. It was contemplated that this money would be used to bribe the corrupt CIS official that Agent Guerra allegedly had access to.

Subsequently, Syed Shahabuddin transported numerous illegal aliens from Chicago to Dallas, in part by automobile, to pre-arranged meetings with Khan in Dallas.[1] According to Shahabuddin, he transported such individuals from Chicago to Dallas based upon information from a man named Naseem Khan in Chicago and based upon requests from the individuals themselves. Once Shahabuddin arrived in Dallas, he would call Shariq Khan for directions to a meeting place–usually a restaurant parking lot. Khan would meet with Shahabuddin, the illegal alien(s), and Agent Guerra. Agent Guerra then sold fraudulent immigration documents to Khan, who in turn sold them to the alien(s) for $6,000 each.

---

[1] Shahabuddin testified that he had known Khan since 1991, at which time Khan lived in Chicago.

These meetings occurred on approximately August 25, September 14, and October 20, 2005.[2] The meetings were observed by Agent Hlavac and other agents, who were conducting surveillance.

On May 17, 2006, a grand jury returned a superseding indictment charging Khan with the following offenses: one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 (Count One); two counts of Fraud and Misuse of Documents in violation of 18 U.S.C. §§ 1546(a) and 2 (Counts Two and Three); one count of Fraud and Misuse of Documents in violation of 18 U.S.C. §§ 1001 and 2 (Count Four); one count of Conspiracy to Transport and Harbor Aliens Illegally in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), and (v)(I) (Count Five); three counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) and 18 U.S.C. § 2 (Counts Six, Eight, and Ten); and three counts of Harboring Illegal Aliens and Aiding and Abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(II) and 18 U.S.C. § 2 (Counts Seven, Nine, and Eleven). Khan pleaded not guilty to all counts.

On October 23 and 24, 2006, Khan was tried before a jury. The jury acquitted Khan of Counts Three and Four, but convicted him on the other counts. On February 13, 2007, the district court sentenced Khan to 33 months imprisonment for each count, to be served concurrently, plus three years of supervised release for each count, also to run concurrently. The court also imposed a mandatory special assessment of $900. Khan now appeals Counts Five through Eleven.[3]

---

[2] The illegal aliens involved in the August 25 meeting were Sonia Nayab and Rais Uddin. The illegal aliens involved in the September 14 meeting were Ashish Patel and Payal Patel. The illegal aliens involved in the October 20 meeting included Pravinkumar Patel, Shaunakkumar Patel, Ranjanbahen Patel, and Ashish Patel.

[3] 8 U.S.C. § 1324(a) governs Counts Five through Eleven. Section 1324(a) provides in relevant part:

## II. STANDARD OF REVIEW

In reviewing the sufficiency of the evidence, this Court must "affirm if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). We review the evidence, "whether direct or circumstantial, in the light most favorable to the jury verdict" and "[a]ll credibility determinations and reasonable inferences are to be resolved in favor of the verdict." United States v. Resio-Trejo, 45 F.3d 907, 910-11 (5th Cir. 1995). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." Lopez, 74 F.3d at 577.

## III. DISCUSSION

### A. Conspiracy to Transport and Harbor Aliens Illegally in the United States

Khan asserts that the government produced insufficient evidence of his participation in a conspiracy to transport and harbor illegal aliens because

---

(1)(A) Any person who–

(ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

(iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; [or]

\* \* \*

(v)(I) engages in any conspiracy to commit any of the preceding acts, or

(II) aids or abets the commission of any of the preceding acts,

shall be punished as provided in subparagraph (B).

4

Shahabuddin, a government witness and Khan's alleged co-conspirator, testified that: (1) he did not know that the people he transported from Chicago to Dallas were illegal aliens; (2) the illegal aliens talked to someone else–not Khan–about coming to Dallas; and (3) it was the illegal aliens–not Khan–who asked Shahabuddin to help them get to Dallas.

The jury, however, was not required to believe Shahabuddin's testimony, and there is ample other evidence in the record showing Khan's participation in the conspiracy.

To prove Conspiracy to Transport and Harbor Aliens Illegally in the United States in violation of § 1324(a)(1)(A)(ii), (iii), and v(I), the government was required to prove that Khan agreed with one or more persons to transport or move illegal aliens within the United States in furtherance of their unlawful presence, or to conceal, harbor, or shield from detection such aliens, knowingly or in reckless disregard of the fact that such aliens had come to, entered, or remained in the United States in violation of law.

To prove a conspiracy, "[n]o express agreement to violate the law need be shown and the conspiracy may be proven by showing that the defendant conspired with one or more others, named or unnamed, to achieve an illegal purpose." United States v. Martin, 790 F.2d 1215, 1219-20 (5th Cir. 1986). A conspiracy, or participation therein, need not be proved by direct evidence–"[t]he conspiracy's existence can be inferred from the facts and circumstances of a particular case." United States v. Robertson, 659 F.2d 652, 656 (5th Cir. 1981). "[A] common purpose and plan may be inferred from a development and collocation of circumstances," id. (internal quotations omitted), and evidence of concerted action "can indicate agreement and voluntary participation" in the conspiracy. United States v. Quiroz-Hernandez, 48 F.3d 858, 866 (5th Cir. 1995).

The circumstantial evidence shows that Khan agreed with someone–whether it was Shahabuddin, "Naseem Khan," or the aliens

themselves–that the aliens would be transported to a meeting place in Dallas where they would pay him to obtain fraudulent immigration documents. Khan devised a scheme to obtain work permits for undocumented workers through the bribery of a supposedly corrupt immigration employee. The undocumented workers traveled to Dallas and paid Khan up to $6,000 each for the work permits. Shahabuddin transported the illegal aliens while in Dallas. Khan directed Shahabuddin's driving while in Dallas, ultimately guiding Shahabuddin and the aliens he was with to meetings with him and Agent Guerra. On at least one occasion, on August 25, 2005, the aliens–Nayab and Uddis–were kept at a house prior to being transported to the parking lot meeting. Nayab testified that the house they stayed at was Khan's, and Khan accompanied them to the meeting with Agent Guerra. Furthermore, the testimony of Ashish and Payal Patel provided evidence that Khan was the one who told them to come to Dallas for the work permits. Finally, as Khan's entire scheme was to provide illegal aliens with phony immigration documents, it is clear that Khan knew that the aliens with which he was dealing were in the United States illegally and that his acts were in furtherance of their unlawful presence.

This evidence, viewed in the light most favorable to the government, is sufficient for a rational jury to conclude beyond a reasonable doubt that the charged conspiracy existed and Khan voluntarily participated in it.

B. Transportation of Illegal Aliens and Aiding and Abetting

Khan contests the sufficiency of the evidence for his conviction on three counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of §1324(a)(1)(A)(ii) and (v)(II) and 18 U.S.C. § 2 for the transportation of Rais Uddin, Ashish Patel, and Ranjanbahen Patel–Counts Six, Eight, and Ten, respectively.

Aiding and abetting occurs "when the defendant associates with the criminal venture, purposefully participates in it, and seeks by his actions to

make it succeed." United States v. Vaden, 912 F.2d 780, 783 (5th Cir. 1990). Aiding and abetting thus has two components: "[a]n act on the part of a defendant which contributes to the execution of a crime and the intent to aid in its commission." United States v. Smith, 546 F.2d 1275, 1284 (5th Cir. 1976). Additionally, "[t]he evidence supporting a conspiracy conviction is generally sufficient to support an aiding and abetting conviction as well." United States v. Gonzales, 121 F.3d 928, 936 (5th Cir. 1997).

The record demonstrates that Khan committed acts which contributed to the unlawful transportation of the named illegal aliens and intended to aid in such transportation, in furtherance of the aliens' unlawful presence. As described above, the record shows that: Khan agreed with someone that illegal aliens would be transported to Dallas where they would purchase fraudulent immigration documents; Khan directed Shahabuddin's driving in Dallas, guiding Shahabuddin and the illegal aliens to pre-arranged meetings; and, on at least one occasion, he guided Shahabuddin and the aliens to his house, where they spent the night, and the next morning he guided and accompanied them to the meeting with Agent Guerra.[4] Furthermore, it is clear that Khan intended to aid in the transportation of the aliens and for such transportation to succeed, as he would not get paid unless the aliens were successfully transported to the meeting with him and Agent Guerra.

---

[4] Although there was direct evidence that Khan directed Shahabuddin's driving once Shahabuddin was in Dallas with Uddin and Ashish Patel, there is only circumstantial evidence of such direction with respect to Ranjanbahen Patel. In fact, the testimony indicates that Ranjanbahen arrived at the parking lot meeting in a vehicle driven by an unidentified male. Although there is no direct evidence linking Khan with the direction of this vehicle, the evidence shows that Khan was the point person for the Dallas meetings and was the only person to direct other aliens to similar meetings on previous occasions. Thus, the jury could have reasonably concluded that in accordance with Khan's overall scheme, Khan directed Ranjanbahen or his driver to the meeting, as Ranjanbahen would have had no way to find the meeting location but for Khan's direction.

Viewed in the light most favorable to the government, this evidence is sufficient for a rational jury to find beyond a reasonable doubt that Khan aided and abetted the illegal transportation of the named aliens.

C.  Harboring Illegal Aliens and Aiding and Abetting

Finally, Khan contests the sufficiency of the evidence for his conviction on three counts of Harboring Illegal Aliens and Aiding and Abetting in violation of §1324(a)(1)(A)(iii) and (v)(II) and 18 U.S.C. § 2 for the unlawful harboring by automobile of Sonia Nayab, Payal Patel, and Pravinkumar Patel–Counts Seven, Nine, and Eleven, respectively.

Harboring encompasses "activity tending substantially to facilitate an alien's remaining in the United States illegally."  United States v. Cantu, 557 F.2d 1173, 1180 (5th Cir. 1977) (internal quotations omitted).  Section 1324(a)(1)(A)(iii) prohibits harboring "in any place, including . . . any means of transportation."

For the same reasons the jury could conclude that Khan aided and abetted the illegal transportation of aliens, the jury could conclude that Khan committed acts which contributed to the harboring of the named illegal aliens and intended to aid in such harboring.  The transportation in Dallas was necessary for the accomplishment of Khan's entire scheme and clearly facilitated the named aliens' unlawful presence in the United States.[5]

IV.  CONCLUSION

---

[5] There is admittedly only slight circumstantial evidence that Khan aided and abetted in the harboring of Pravinkumar Patel.  However, viewed in the light most favorable to the government and given the evidence of Khan's intimate involvement in the entire scheme, there was sufficient evidence with respect to this count of aiding and abetting harboring.  Agent Hlavac witnessed Pravinkumar at the October 20, 2005 meeting with Khan and Agent Guerra, and another alien testified that Pravinkumar was in a group of aliens from Chicago.  Based on this evidence and the evidence of the logistics of Khan's entire scheme, it was reasonable for the jury to believe that: Pravinkumar was an illegal alien present to purchase fraudulent immigration documents, Pravinkumar came to the meeting by automobile as other aliens had before him, and that Khan–in accordance with his past actions–directed Pravinkumar to the meeting.

For the foregoing reasons, the judgment of the district court is AFFIRMED.